IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUZ N. GONZÁLEZ COTTO,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 19-1129 (MEL)

**OPINION AND ORDER**

Pending before the court is Luz N. González Cotto's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. ECF No. 17. Plaintiff challenges the administrative law judge's determination at step two of the sequential process that her right foot fracture, depressive disorder, and musculoskeletal impairments of shoulders, wrists, and elbows were not severe. It is also alleged by Plaintiff that the administrative law judge erred by not considering all of her limitations in the RFC determination.

**I.    Procedural and Factual Background**

On July 8, 2013, Plaintiff filed an application for Social Security benefits alleging that on January 15, 2013 ("the onset date"), she became unable to work due to disability. Tr. 67.[1] In her original disability application, Plaintiff alleged that she was disabled due to fibromyalgia, high blood pressure, depression, hypoglycemia, high cholesterol, and a stomach ulcer. Tr. 108, 458. In November 2013, Plaintiff suffered a right foot open fracture and she subsequently supplemented her disability application with the foot fracture. Tr. 209-210, 487, 497.

---

[1] "Tr." refers to the transcript of the record of proceedings.

Prior to becoming unable to work, Plaintiff was a teacher aid and food administrator. Tr. 81. Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. Tr. 69. Plaintiff's disability claim was denied initially on December 6, 2013, and upon reconsideration. Tr. 67. Thereafter, Plaintiff requested a hearing which was held on June 11, 2016 before Administrative Law Judge Myriam Fernández Rice (hereafter "the ALJ"). Tr. 88. On August 12, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 82. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 430-435. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1. Plaintiff filed a complaint on February 8, 2019. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 17, 21.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security

Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found at step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 15, 2013. Tr. 69. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had the following severe impairments: "mild osteoarthritis of the cervical spine, and fibromyalgia." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 75. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functioning capacity to perform medium work as defined in 20 CFR 404.1567(b) except that she can occasionally lift and carry 20 pounds and frequently 10 pounds. She can sit for a total of six hours during an 8-hour workday, stand or walk for six hours during an eight-hour day. She can frequently climb ramps or stairs. She can occasionally climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch and crawl.

Tr. 77. At step four, the ALJ determined that Plaintiff could perform her past relevant work as a teacher aid and food administrator. Tr. 81. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 81-82.

**III.   Legal Analysis**

   **A. The ALJ's Step Two Determination**

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to find that she had severe impairments of a right foot fracture, depressive disorder, and musculoskeletal conditions of her shoulders, elbows, and wrists. ECF No. 17, at 14. "The step two severity test acts as a de minimis screening policy for the Commissioner to screen out groundless claims that would clearly result in a finding of non-disability, even if vocational factors were considered." López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 377 (D.P.R. 2014) (citing McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1125-26 (1st Cir. 1986)). Step two of the sequential process

> demands a determination of two things: (1) whether a claimant has a medically determinable impairment[2] or combination of impairments, and (2) whether the impairments or combination of impairments is severe, that is, that significantly limits or is expected to significantly limit the ability to perform basic work-related activities[3] for twelve consecutive months.

Id. (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). "A claimant has the burden at step two of establishing that he has a medically 'severe' impairment—one that 'significantly limits' his physical or mental ability to perform 'basic work activities.'" Santiago Serra v. Sec'y of Health and Human Servs., 915 F.2d 1556 (1st Cir. 1990) (quoting 20 C.F.R. § 404.1520(c)).

In the case at hand, substantial evidence supports the ALJ's determination that Plaintiff's right foot fracture was not severe. Tr. 70-71. In November 2013, Plaintiff required surgery after a

---

[2] A medically determinable impairment is a physical or mental impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

[3] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; and mental functions such as understanding, carrying out, and remembering simply instructions; using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

metal object fell on her foot causing an open fracture. Tr. 70, 209. At the ten week post-operation visit following surgery, treating orthopedic surgeon Dr. Félix Rodríguez ("Dr. Rodríguez") noted that "xrays today show excellent healing of a very bad traumatic injury." Tr. 70, 221. In May 2014, Dr. Rodríguez noted a restricted range of motion in Plaintiff's toe joint and she was instructed to accommodate this by switching to rocker bottom soled shoes. Tr. 70, 651. Subsequently, Plaintiff complained of foot pain at times, and underwent a procedure to shave a foot callus in February 2016 without further treatment for her healed fracture. Tr. 80-81, 820.

The ALJ appropriately considered Dr. Rodríguez's ongoing treatment notes and reasonably concluded that the evidence did not establish limitations in her ability to sustain standing or walking resulting from her right foot injury. Tr. 70-71. Throughout the relevant time, Dr. Rodríguez's notes showed that Plaintiff had good pulses, good capillary refill, soft compartments, and no motor or sensory deficits except, sometimes, on the dorsum of her foot. Tr. 210, 212, 215, 218, 221, 729, 732, 735, 738. The ALJ noted that Dr. Rodríguez did not report any functional limitations related to her foot condition, and the examination and diagnostic testing showed that Plaintiff's fracture had completely healed. Tr. 71, 202-31, 759, 762-64, 767.

While Plaintiff mentions that her foot condition "required surgery with plates and screws into [her] right foot," that is not sufficient to find that she has a severe impairment. ECF No. 17, at 16. Even if the initial injury did cause significant limitations in the first few months prior to healing, this would not make Plaintiff's foot condition a severe impairment because a condition can only be disabling if it causes her to be unable to perform substantial gainful activity for a continuous period of at least 12 months. See Barnhart v. Walton, 535 U.S. 212, 216-225 (2002). Thus, the ALJ's finding that Plaintiff's foot injury was not severe is supported by substantial evidence.

Regarding Plaintiff's musculoskeletal impairments, the ALJ found that they were not severe and did not establish more than slight limitations in her ability to perform daily activities. Tr. 71. Plaintiff contends that the musculoskeletal impairments affecting her upper body are severe because she could not do household chores on a sustained basis. ECF No. 17, at 17. In November 2013, examining internist Dr. Yarelis Pérez Rivera ("Dr. Pérez") noted that Plaintiff reported pain in her shoulders and hands with a limited range of motion, and that she had a limitation in bilateral gripping and grasping. Tr. 71, 572, 576. However, Dr. Pérez's examination also found that Plaintiff had good muscle tone throughout, no atrophy, no motor or sensory deficits, full 5/5 strength in her left and right hands, and full range of motion in her neck, elbows, wrists, and thumb joints. Tr. 71, 572, 576-78.

The ALJ also considered the assessments of state agency medical consultants Dr. Osvaldo Rivera ("Dr. Rivera") and Dr. Eileen Zayas ("Dr. Zayas") who reviewed the record and opined that Plaintiff could perform light work with no manipulative limitations. Tr. 71, 335-36, 347-49. Furthermore, the ALJ relied upon examining state agency psychologist Dr. Ana Pinilla's ("Dr. Pinilla") evaluation where Plaintiff reported being able to complete activities of daily living such as cooking, sweeping and mopping the floors, and doing laundry and folding clothes. Tr. 71, 582. It was also noted by the ALJ that Plaintiff continued working until January 2013 despite experiencing various upper extremity musculoskeletal conditions since 2010. Tr. 71, 451. In addition, the ALJ noted the inconsistency of finding a severe fibromyalgia impairment while also finding severe upper extremity musculoskeletal impairments. Tr. 79. To diagnose fibromyalgia, a physician must rule out other disorders that could cause the symptoms. Tr. 79, SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012). Based on treating rheumatologist Dr. Rafael Morales' ("Dr. Morales") opinions as well as Dr. Pérez's documentation of Plaintiff's

medical history regarding fibromyalgia, the ALJ found that Plaintiff had the severe impairment of fibromyalgia. Tr. 79, 573, 601, 630, 809-11. Thus, the ALJ's finding that Plaintiff's musculoskeletal impairments were not severe is supported by substantial evidence.

Regarding Plaintiff's depressive disorder, the ALJ determined that it caused no more than "mild" limitations and was therefore not severe. Tr. 72-74. In evaluating the severity of a claimant's medically determinable mental impairment, the ALJ rates the degree of functional limitation caused by said impairment. See 20 C.F.R. § 404.1520a(b)(2). The ALJ assesses the degree of functional impairment resulting from four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. at § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. If the degree of limitation in each of the first three areas is evaluated as mild or better, and there are no episodes of decompensation, the ALJ will generally conclude that the claimant's mental impairment is not severe. See 20 C.F.R. § 404.1520a(d)(1).

In the case at bar, the ALJ determined that Plaintiff had a mild restriction in the area of activities of daily living. Tr. 72. The ALJ's assessment is supported with statements that Plaintiff provided in her function report. Tr. 73, 118-125. Plaintiff reported that she performed normal duties at home such as sweeping, mopping, scrubbing, and doing laundry which were consistent with her statements to Dr. Pinilla. Tr. 120, 582, 584-85. Dr. Pinilla's psychological report indicated that Plaintiff reported that she did not need help or require reminders to bathe, feed, or take care of herself. Tr. 582. At the hearing, Plaintiff testified that she required some assistance to cook and clean, but that was primarily due to pain symptoms. Tr. 95. Second, the ALJ determined that Plaintiff had mild limitations in the area of social functioning. Tr. 73. This determination was supported by Plaintiff's reports that she socialized with others and

Dr. Pinilla's report that Plaintiff "likes to be with other persons and enjoys their company." Tr. 123, 583.

In assessing Plaintiff's concentration, persistence, or pace, the ALJ found that Plaintiff seemed communicative and had appropriate conversation during the hearing. Tr. 73. The ALJ also referenced Dr. Pinilla's observations that Plaintiff had a relevant and coherent thought process which is consistent with the hearing testimony. Tr. 73, 583. Thus, the ALJ found that Plaintiff only had mild restrictions in this area of mental functioning. Tr. 73. Lastly, Plaintiff did not cite to any evidence of repeated episodes of decompensation. Tr. 73. The ALJ's determination is also supported by the opinions of state agency psychological consultants Dr. Sydnia Rosado ("Dr. Rosado") and Dr. Zulma Nieves ("Dr. Nieves") who each concluded that Plaintiff had only mild limitations in the areas of mental functioning and no episodes of decompensation. Tr. 74, 332-34, 345-46.

Plaintiff's sole argument in contending that the ALJ erred in finding her depressive disorder to be non-severe is that the ALJ should not have relied upon the opinions from Dr. Rosado nor Dr. Nieves because they did not evaluate all the medical evidence in the file. ECF No. 17, at 17. Plaintiff is correct that Dr. Rosado's evaluation from December 2013 did not consider her medical records from APS Healthcare Inc. ("APS") because no treatment records from APS had been received at that time. See Tr. 329-31, 333-34. However, Plaintiff is mistaken that Dr. Nieves did not consider medical evidence from APS. The record indicates that Plaintiff's APS treatment records from January 2013 through March 2014 were included in the evidence evaluated by Dr. Nieves. Tr. 340-44, 604-25. In her evaluation, Dr. Nieves noted that she "reviewed all the evidence in file and the prior assessment is affirmed as written. Evidence in file does not sustain any finding suggesting worsening of claimants [sic] mental condition." Tr. 346.

Thus, Dr. Nieves reviewed 14 months of APS medical evidence and reasonably concluded that Dr. Rosado's opinion remained an appropriate assessment. See id.

The ALJ also specifically considered later evidence from APS where treating general practitioner Dr. Christian Hernández Nazario's ("Dr. Hernández") treatment notes indicated that Plaintiff was fully oriented; with logical, relevant, and coherent thought process; intact immediate, recent, and remote memory; adequate concentration; average intellect; and adequate insight. Tr. 74-75, 278-80. Thus, substantial evidence supports the ALJ's finding that Plaintiff's depressive disorder was non-severe.

### B. The ALJ's RFC Determination

Plaintiff asserts that the ALJ erred in not considering her right foot fracture, depressed disorder, and the musculoskeletal impairments of her shoulders, elbows, and wrist in making the RFC determination. ECF No. 17, at 18-22. At step three, the ALJ is responsible for determining a claimant's RFC based on all of the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. When it has been determined that a claimant has a severe impairment, the ALJ must consider the combined effects of all the claimant's impairments, severe and non-severe, throughout the sequential evaluation, including in the RFC determination. Id. at § 404.1523(c).

In the case at hand, the ALJ specifically considered Plaintiff's healed right foot fracture and found that the record did not establish more than slight functional limitations related to her foot condition. Tr. 78, 80-81. The ALJ considered treatment notes from Dr. Rodríguez who treated Plaintiff's right foot injury from November 2013 through July 2016. Tr. 78. Dr. Rodríguez's notes showed that Plaintiff had no motor or sensory deficits except, sometimes on the dorsum of her foot. Tr. 210, 212, 215, 218, 221. In July 2014, Dr. Rodríguez opined that

11

Plaintiff's right foot ulcer had completely healed and x-rays revealed that her right foot was healed with some arthritic changes. Tr. 228. The ALJ specifically noted that Dr. Rodríguez did not report any functional limitations related to her foot condition. Tr. 71, 759, 762, 764, 767. The ALJ also considered Plaintiff's complaint of inability to walk more than 15 minutes. Tr. 77. However, the ALJ reasonably concluded that Plaintiff's subjective complaint was not entirely consistent with the record given the medical findings and treatment evidence, which showed no need for urgent care, the ability to control symptoms with medications, and no subsequent treatment for the healed fracture. Tr. 77-78, 80-81. Thus, the record reflects that the ALJ considered the functional limitations resulting from Plaintiff's foot condition in her RFC determination. Tr. 77-81.

    Next, Plaintiff's upper extremity musculoskeletal impairments were also considered by the ALJ during the RFC determination. Tr. 78-79. In assessing her RFC, the ALJ stated that "[t]he record reveals that [Plaintiff] had treatment . . . for pain symptoms in the back and neck and sprain of a right elbow prior to her alleged onset of disability from November 2010 through November 2012." Tr. 78. The ALJ specifically considered the functioning of Plaintiff's shoulders, elbows and wrists through the evaluation of Plaintiff's severe impairment of fibromyalgia. Tr. 72, 79-80. It was noted by the ALJ that Dr. Morales' treatment notes from July 2016 indicated there was no restriction of range of motion in the upper extremities. Tr. 79, 811, 812. Further, Dr. Pérez did not perceive any tenderness in her neck and did not report limitations in the range of motion during the consultative examination. Tr. 572, 577. The ALJ also considered Plaintiff's functional report where she reported being able to perform household chores such as mopping and sweeping floors, laundry, dishwashing, and folding laundry. Tr. 80,

12

119, 120. Additionally, the ALJ referenced Dr. Pinilla's evaluation where Plaintiff described being able to cook, and clean the furniture, floors, and bathrooms. Tr. 77, 582.

Finally, regarding Plaintiff's depressive disorder, the ALJ found that Plaintiff had only mild limitations in the four broad areas of functioning and specifically considered the functional limitations related to this non-severe impairment. Tr. 74-75. The ALJ referenced Dr. Pinilla's psychological report that Plaintiff had spontaneous, understandable speech; coherent, relevant, and logical thought process; good insight; and adequate attention and concentration. Tr. 74, 583-84. Dr. Pinilla also noted that Plaintiff reported that she could manage her funds and takes care of her personal hygiene and needs. Tr. 582. Thus, Dr. Pinilla opined that Plaintiff exhibited normal mental status functioning and estimated average intellectual functioning. Tr. 74, 585. The ALJ concluded that Plaintiff did not have any significant functional limitations from her mental impairments, and thus, did not include any mental limitations in Plaintiff's RFC. Tr. 74, 77.

Lastly, the ALJ gave significant weight to the state agency's physical assessment by Dr. Rivera and Dr. Zayas which coincided that Plaintiff retained the capacity to perform the exertional demands of light work as defined in 20 CFR § 404.1567(b). Tr. 79, 335-36, 345. Thus, the ALJ specifically considered Plaintiff's non-severe impairments in the RFC determination and reasonably determined that Plaintiff could perform a range of light work. Tr. 74-75, 77-81; see Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

## IV. Conclusion

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2020.

s/Marcos E. López
U.S. Magistrate Judge
